# Barclay, Appellant, v. Deckerhoof et al.

*Contract—Material alteration—Discharge of sureties—Additional work— Independent agreement—Construction of contract.*

A material alteration of a contract without the consent of the sureties, will discharge them, but the addition of a separate and independent agreement, which does not, expressly or by fair implication, alter the terms of the preceding contract, or affect the rights and duties of the parties thereunder, will not so operate.

Defendants became sureties upon a building contract.   Afterwards, without notice to them, by an indorsement upon the original contract, the contractor undertook to do further work, for which the owner was to pay and did pay.   In an action against the sureties for losses occasioned by the contractor's default on the main contract, the court below left it to the jury to determine whether the additional agreement was or was not an alteration of the original contract, imposing additional burden upon the sureties.   *Held*, that the construction of the agreement was for the court and that the court erred in refusing to hold that the additional agreement was not an alteration of the original contract, and in admitting testimony, to contradict, qualify and explain it.

Argued May 9, 1892.   Appeal, No. 189, July T., 1891, by plaintiff, John J. Barclay, from judgment of C. P. Bedford Co., Feb. T., 1890, No. 240, on verdict for defendants, Simon Deckerhoof et al.   Before PAXSON, C. J., GREEN, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Assumpsit on bond to charge sureties for default of builder.

On the trial before BAER, P. J., the evidence was to the effect that defendant Deckerhoof, on June 19, 1888, contracted

in writing to erect a dwelling for plaintiff. It was provided in this agreement that "all alterations of the afore-mentioned plans and specifications by which the cost of the building may be either increased or diminished, shall be indorsed on these articles and signed by the parties, before they shall be deemed binding on either party."

The specifications provided that the building should be "two stories high with loft and attic rooms in the front finished and the loft in the back part unfinished. Should disputes arise, or anything require explanation or further detail the contractor is to apply to the architect, allowing him a reasonable time to supply the same, and is to accept as final his interpretation of the contract, and is to comply with any such further detail given him as part of the contract. The architect shall be empowered to make any deviation from or alterations in the drawings and specifications that may be desired by the owner, without invalidating or rendering void the contract. In case of any difference in the expense, an addition to or abatement from the contract price shall be made. In no case will any extra or addition be admitted or allowed for, unless executed under written authority, the amount of costs to be agreed upon in writing before said extra work shall be commenced. . . . All disputes, however arising, and all questions of doubt as to the tenor and intention of the drawings and specifications, or of the contract, shall be referred to the architect, whose decision shall be considered final, binding and without power of reference on all parties concerned."

Indorsed on the specifications was the following, signed by both parties to the contract and witnessed by the architect:

"It is agreed the 26th day of September, A. D., 1888, that Simon Deckerhoof is to finish the entire rear attic of the within specified building for which J. J. Barclay agrees to pay the sum of thirty-five dollars."

Defendants, Joseph T. Alsip and William G. Eicholtz, became sureties for Deckerhoof on a bond conditioned "that if the above bounden Simon Deckerhoof shall and will well and substantially erect, build and deliver to the said J. J. Barclay or his legally authorized agent or agents one house, messuage or tenement, according to plan, draft or scheme made by P. Bernheisel, Jr., Architect, Harrisburg, Pa., the specifications accom-

panying and terms of article of agreement signed and sealed June 19, 1888, they being identified with and part of this agreement, then the above obligations to be void, or else to be and remain in full force and virtue."

Plaintiff's points were among others as follows:

"5. There are no such changes or alterations in the contract or in the style and finish of the building as under all the evidence in this case will relieve the sureties on the bond for such damages to the plaintiff as may be proved in the case. *Answer:* If the jury believe that by this indorsement, made on the 26th of September, 1888, and entered on the specifications, by which it was agreed that Simon Deckerhoof should finish the entire rear attic of the building specified in the contract for the sum of $35, to be paid by J. J. Barclay, and which was signed by the plaintiff and the contractor and witnessed by the architect, was made and indorsed without the assent of the sureties, and find that it was not an independent contract but was made a part of the original contract, and increased or enlarged the burden and risk of the sureties, then the sureties were thereby relieved. But if you find that such a change as that indorsed on the specifications on the 26th of September, 1888, was a mere independent contract between Barclay and Deckerhoof, and not made or intended to be a part of or embraced in the original contract, and did not increase the burden or risk of the sureties, then it would not relieve the sureties." [1]

"8. By the terms of the contract, the contractor agreed to accept as final the architect's interpretation of the contract and to comply with any other details given, and the architect was empowered to make any deviations from or alterations in the drawings and specifications that may be allowed by the owner, without invalidating or rendering the contract void, and the contractor was to erect and complete the building according to specifications and drawings and according to the directions and entire satisfaction of the architect, then the defendants cannot be relieved in this action by reason of any additions, alterations or changes, as claimed, or for extra work contracted for with Deckerhoof. *Answer:* This point is affirmed so far as it relates to changes of plan and specifications; but not as to any changes or alterations, if any, in the contract itself, which enlarged the burden of the sureties. It is refused." [2]

"10. If the jury believe that Deckerhoof contracted to erect the plaintiff's building according to the plans, drawings, specifications and contract, offered in evidence; and that he failed to erect the same and deliver it to the plaintiff, complete and discharged of liens, then, under all the evidence in this case, the plaintiff is entitled to recover from the defendants such sum as damages as he was required to pay by the failure of the contractor to complete the same and deliver it to the plaintiff discharged of liens. *Answer:* By this point the plaintiff claims the right to recover the difference between the contract price and the whole amount required to be paid out on account of this building. This point is affirmed unless under the evidence and the charge of the court the jury find that the sureties were relieved by a change or alteration in the contract without their assent, and which was material and increased their burden, as has been fully indicated both in the general charge and in the answer to the other points. If their burthen was not so increased, they are not relieved; and then this point would be refused." [3]

Defendant's points were among others as follows:

"5. Any material alteration in the contract, by Barclay, without the consent of the sureties on the bond, discharges the sureties from their obligation on the bond; and the agreement entered into on the 26th day of September, 1888, by Barclay with Deckerhoof, under and by which Deckerhoof bound himself to complete and finish the attic of the building which was not required or contracted for in the original agreement, imposed an additional obligation on Deckerhoof and was a material change or alteration of the contract as it existed at the time the bond was given and relieved the sureties in this case from their obligation, and there can be no recovery against them." Answered with next point.

"6. That clause in the specifications, 'that the architect shall be empowered to make any deviation from or alteration in the drawings and specifications that may be desired by the owner, without invalidating or rendering void the contract,' did not give to Barclay any right to make alterations in the contract; and the change in the contract, made by Barclay with Deckerhoof, the one on the 26th day of September, 1888, by which the attic of the building was to be finished, and the other the

change made by Barclay by his letter of October 13, 1888, by which the pantry and the doors were changed from the original plans and specifications, which entailed additional labor and expense on Deckerhoof, were material alterations in the contract; and, being made without the knowledge and consent of the sureties, discharged them from their liability on the bond in suit, and no recovery can be had against them in this case. *Answer* to 5th and 6th points: We say to you, gentlemen of the jury, that a material change or alteration in the contract as made between the plaintiff and Mr. Deckerhoof, by which the burden of the sureties would be increased, would discharge or relieve the sureties. You will look at the agreement made on the 26th of September, 1888, and indorsed on the specifications and signed by plaintiff and contractor, and on all the evidence in the case you will first determine whether that agreement was an independent subsequent agreement, made by them, on which the work to be done and money to be paid was outside of the original agreement or contract, or whether it was in fact a mere change or alteration of the original contract in a material part and without the assent of the sureties, and whether it became and was intended to be a part of and included in the original contract. If it was an independent contract, and did not in any sense or degree affect the responsibility of the sureties on the bond by increasing their burden, there can then be a recovery in the case; but if it became, and was intended to be, an alteration and change of the contract and a part of it, and increased the burden of the sureties and their risk, then there can be no recovery in this case." [4]

" 8. If the jury believe there was any alteration made in the contract by Barclay or Deckerhoof, without the knowledge or consent of the sureties, that was material, and that would require the sureties or make them liable to pay any sum in excess of what they would have been liable for under the contract as it existed when the bond was signed,—such alteration would avoid the contract as to the sureties, and there can be no recovery against them in this suit." Affirmed. [5]

Verdict for plaintiff against the contractor only, and for defendants as to sureties, and judgment thereon. Plaintiff appealed.

*Errors assigned* were, among others, (1–5) instructions, quoting them.

*John M. Reynolds,* for appellant.—A submission to the jury of a question without evidence to support it is error: Selser v. Roberts, 105 Pa. 242.

*Alexander King,* with him *John H. Jordan,* for appellees.— The evidence as to the change of contract was conflicting and properly submitted to the jury.

OPINION BY MR. JUSTICE McCOLLUM, October 3, 1892.

That a material alteration of a contract without the consent of the sureties will discharge them is a principle which is not disputed. But the appellant contends that the sureties in this case are not discharged, because, first, the agreement between him and Deckerhoof on the 26th of September, 1888, is not an alteration of the contract of June 19, 1888, for the due performance of which by Deckerhoof they became sureties; and, second, if it was an alteration of that contract it was made by the architect in the proper exercise of the powers conferred upon him by the parties with the knowledge and approval of the sureties. We think the first contention is sound and that the second is not. The agreement of September 26th was in writing, indorsed on the contract of June 19th and signed by the appellant and Deckerhoof. It was their act. It provided for work additional to that called for by the former contract and fixed the compensation to be paid therefor. It was a separate and independent agreement. It did not expressly or by any fair implication alter the terms of the preceding contract or affect in the slightest degree the rights and duties of the parties thereunder. The sureties were bound for the construction of the building in accordance with the plans and specifications of that contract and there was no attempt or intent to enlarge their obligation by the subsequent agreement between the owner and contractor. It did not change the work for which the sureties were bound, or the price to be paid for it. As there was no ambiguity in this agreement its construction was for the court, and error was committed in allowing the jury to declare it an alteration of the prior contract and a discharge of the sureties. There is nothing in the parol testimony which affords any ground for a construction of the agreement of September 26th at variance with these views. It abundantly sustains our interpretation of that agreement.

Both parties to it testified substantially that it was a distinct and independent undertaking. Whether we consider it as it was written or in the light of the testimony offered to explain and qualify it, the fact remains that it is not an alteration of the contract for the performance of which the sureties were bound. It takes up the work where that contract leaves it, and calls for the finishing of the back attic for thirty-five dollars. This work was done by the contractor and paid for by the owner, and it is not a subject of contention in this case. If under the first contract Deckerhoof was not required to paint the building, his agreement with the owner afterwards to paint it for a stipulated sum would scarcely be claimed as a modification of that contract or a change of his obligations under it. Such an agreement would, like the agreement to finish the back attic, stand by itself, having no connection with or effect upon the work to be done or the price to be paid under the first contract.

We think the learned court below erred in refusing to hold that the agreement of September 26th was not an alteration of the contract of June 19th and in admitting testimony to contradict, qualify or explain it. We do not discover other substantial error. The specifications which complain of rulings which constitute the errors pointed out, are sustained and all other specifications are overruled.

Judgment reversed and venire facias de novo awarded.