PARK *v.* BRUNSWICK-BALKE-COLLENDER CO.

HOPPERSTEAD *v.* PACE.

1. APPEAL AND ERROR—PARTY NOT APPEALING MAY NOT ASK FOR REVERSAL.

One who has not appealed may not ask for reversal of decree.[1]

2. MECHANICS' LIENS—PRINCIPAL AND SURETY—VOLUNTARY PAYMENTS RELEASED SURETY.

As between the obligee and the surety on the contractor's bond, voluntary payments by the obligee to the contractor which did not reach the materialmen or laborers, which was not required by the contract, and was made without requiring the affidavit provided for in 3 Comp. Laws 1915, § 14799, operated as a release of the surety, and where the voluntary payments exceeded the amount of the bond the surety was completely released.[2]

Appeal from Muskegon; Vanderwerp (John), J. Submitted April 14, 1926.    (Docket No. 83.)    Decided June 7, 1926.

[1]Appeal and Error, 4 C. J. § 2598; [2]Building and Construction Contracts, 9 C. J. § 197.

As to effect of payment not authorized by the contract to release the surety on building contractor's bond, see notes in 5 L. R. A. (N. S.) 418; L. R. A. 1915B, 407.

Bills by Edward W. Park and Garrett L. Keur, co-partners as Park & Keur, against Brunswick-Balke-Collender Company and the American Surety Company of New York, and Oscar A. Hopperstead, doing business as the People's Hardware Company, against Ernest P. Pace, administrator of the estate of Frank M. Boyle, deceased, the W. J. Brinen Lumber Company, James J. McDermott and others to foreclose mechanics' liens.

Assumpsit by Brunswick-Balke-Collender Company against the American Surety Company of New York on a surety bond. The cases were consolidated and heard as one. From the decree rendered, the surety company appeals. Modified and affirmed.

*Wetmore & Bagley,* for plaintiffs Park and Keur.

*Harris E. Galpin,* for plaintiff Brunswick-Balke-Collender Co.

*Cross, Foote & Sessions,* for defendants W. J. Brinen Lumber Co. and McDermott.

*Miller, Canfield, Paddock & Stone,* for appellant.

Defendant Brunswick-Balke-Collender Company entered into an agreement with one Frank M. Boyle to erect for it a building called in the record the Matrix building, for which it agreed to pay him $8,000. Mr. Boyle died when the building was but partially completed. Before his death the company paid him $6,000. American Surety Company of New York was the surety on his bond running to the company, such provisions of which as are pertinent to this inquiry are as follows:

"Now therefore, the condition of this obligation is such, that if the principal shall indemnify the obligee against any loss or damage directly arising by reason of the failure of the principal to faithfully perform

said contract, and shall pay for all labor performed and materials furnished in connection therewith, then this obligation shall be void, otherwise to remain in full force and effect.

"Provided, however, and upon the express conditions, the performance of each of which shall be a condition precedent to any right to recovery hereon.   *   *   *

"*Fourth:* That the obligee shall faithfully perform all the terms, covenants and conditions of such contract on the part of the obligee to be performed; and shall also retain that proportion, if any, which such contract specifies the obligee shall or may retain of the value of all work performed or materials furnished in the prosecution of such contract (not less, however, in any event, than ten *per centum* of such value), until the complete performance by the principal of all the terms, covenants and conditions of said contract on the principal's part to be performed; that the plans and specifications mentioned in said contract are not in any respect defective, and are and at all times will be kept adequate for the complete performance of such contract, and that no change shall be made in such plans and specifications which shall increase the amount to be paid the principal more than ten *per centum* of the penalty of this instrument, without the written consent of the surety.

"*Fifth:* That no right of action shall accrue upon or by reason hereof, to or for the use or benefit of any one other than the obligee herein named; and that the obligation of the surety is, and shall be construed strictly as, one of the suretyship only, shall be executed by the principal before delivery, and shall not, nor shall any interest therein or right of action thereon, be assigned without the prior consent, in writing, of the surety."

After Mr. Boyle's death, the administrator of his estate, acting under authority of an order of the probate court, employed plaintiffs Park and Keur to complete the job, which they did to the satisfaction of the owner.    Plaintiffs Park and Keur, having taken preliminary steps for a lien on the premises, filed a bill to foreclose their lien; other materialmen also filed

bills for the enforcement of their liens. The sub-contractors and materialmen will hereafter for convenience be called the lienors, the Brunswick-Balke-Collender Company will hereafter be called the appellee, and the surety company will be called the appellant. None of the lienors asked for any relief against appellant. Appellee brought suit at law against appellant and it filed a petition to intervene under section 12362, 3 Comp. Laws 1915, and to have its rights and liabilities adjudicated according to the provisions of section 14805, 3 Comp. Laws 1915. The petition was granted and the cases were consolidated and heard together. Appellant raised some minor questions, but the main question, and the controlling one, is its contention that the appellee, obligee in the bond, having voluntarily paid the contractor Boyle $6,000, such payment operates to discharge the surety to that amount, and inasmuch as that amount, together with the sum still owing the contractor, exceeds the liens, it cannot be held on the bond.

FELLOWS, J. (*after stating the facts*). Appellee in its brief seeks to raise some questions touching the validity of the liens. These liens were sustained in the decree entered in the court below and appellee has not appealed. The rule is too well established to need citation of authorities that one who has not appealed can not here ask for a reversal of the decree. We pass the minor questions raised by appellant, as we are satisfied its principal contention must be sustained. The appellee agreed to pay the contractor Boyle $8,000 for a completed building. There was no provision for any payment as the work progressed. There was nothing due the contractor until the building was completed. It was a condition of the bond that the obligee should retain in its hands that portion of the contract price it might retain. There is no

testimony proving or tending to prove that any of the money paid Boyle was used to pay materialmen or laborers.    The payment was made without requiring of the contractor the affidavit provided for in section 14799, 3 Comp. Laws 1915.    The payment of the $6,000 was a voluntary payment pure and simple and the instant case cannot be distinguished from the case *Sandusky Grain Co.* v. *Condensed Milk Co.*, 214 Mich. 306.    In that case we fully reviewed the authorities, many of which were by analogy applicable to that case and directly applicable to this case and held that voluntary payments made by the owner to the contractor which did not reach the materialmen or laborers released the surety, at least *pro tanto*, and inasmuch as such voluntary payments exceeded the amount of the bond the surety was completely released.    We must so hold here.    We need not go over the ground again.    See *Fidelity & Casualty Co.* v. *Livingston*, 234 Mich. 375, and authorities there cited.

But counsel for appellee says the bond in question is a materialmen's and laborers' bond and the surety is a guarantor, and cites 21 R. C. L. p. 1015, to sustain his contention that the rule announced in the *Grain Company Case* is not applicable to such a bond.    By italicizing a few words in the quotation relied upon it will be seen that it is entirely inapplicable to the present case.    The quotation relied upon by counsel is as follows:

"Moreover, where a bond provides not merely for the performance of the contract, but also for the payment of materialmen and laborers, *their rights* cannot be affected by violations of the contract by the owner, and *as to them* the surety is not released by the owner's violation of a provision in the contract for retained percentages."

*Standard Asphalt, etc., Co.* v. *Texas Building Co.*, 99 Kan. 567 (162 Pac. 299, L. R. A. 1917C, 490), is

cited.   The bond in that case was given to secure materialmen and laborers under the provisions of section 7006, General Statutes of Kansas, 1909, and the suit was brought upon it by a materialman.   It was expressly pointed out that a suit might be maintained by a materialman for whose benefit it was given irrespective of whether one could be maintained upon it by the railroad company, and it was said:

"Besides, the controversy here is between those who furnished labor and material and the guaranty company, upon a statutory bond expressly given for the protection of laborers and materialmen, and upon which they are authorized to sue regardless of what action may be taken by the obligee in the bond.   Gen. Stat. 1909, §§ 7006, 7007.   The bond serves the double purpose of securing the performance of the contract and the payment of claims for labor and material employed in the work.   Laborers and materialmen have rights under this statutory bond independent of the obligee.   The bond is required by the legislature for the benefit of laborers and those who furnish material for railroad construction, and no agreement between the railway company and the contractor or between him and the guaranty company can affect the rights of laborers and materialmen to recover upon the bond given for their protection.   Modifications of the contract, or failures to observe some of its provisions, which might be good defenses as between the guaranty company and the obligee in the bond, will not relieve the guaranty company from liability upon the bond to laborers and materialmen.   *   *   *   Whatever defenses the guaranty company might have in an action between itself and the railway company, none of the defenses advanced by it are available as against the plaintiff for the labor and material furnished by it on the faith of the bond given for the protection of those furnishing labor and material in the railroad construction."

And the same court in *Young Men's Christian Ass'n* v. *Ritter*, 90 Kan. 332 (133 Pac. 894, L. R. A. 1915C, 170), a case cited and quoted from by us in the *Grain*

*Company Case,* where the action was brought by the owner upon the bond, held precisely as we held in the *Grain Company Case,* and as we are holding in this case, that as between obligee and surety voluntary payments by the obligee discharge the surety *pro tanto.* That Ruling Case Law did not go to the length contended for by counsel is made plain by turning back a page, where we find the following:

"It is a general principle that any material alteration in a building contract will release nonconsenting sureties on a bond given to guarantee the faithful performance of the contract, and to protect the owner against any claims or liens for labor or materials used in the construction of the building. Whether a payment made by the owner before it has become due, or in an amount larger than provided for in the contract, is such a material alteration of the contract as to release the sureties is a question on which the decisions do not agree; but the weight of authority seems to be that such payments will release the sureties." 21 R. C. L. p. 1013.

*United States Fidelity & Guaranty Co.* v. *American Blower Co.,* 41 Ind. App. 620 (84 N. E. 555), also relied upon by appellee was likewise an action by a materialman on a bond given for its benefit. The contract involved the installation of a heating and ventilating plant in a schoolhouse, upon which no lien could attach, and like reasoning was indulged in as is found in the *Standard Asphalt Case.* Turning to the provisions of the bond in the instant case, it will be noted that it was expressly stipulated that it was one of suretyship and that no right of action should accrue upon it except to the obligee nor should any such right of action be assigned without written consent of the surety.

But a further answer to appellee's contention, and a complete one, is that no materialman or laborer is here seeking recovery on this bond. None of the lienors in their bills ask for such relief or claim any

benefit under the bond.    It is the appellee who seeks to shoulder the loss occasioned by its own act upon the surety company.    This it may not do.

The decree will be modified in accordance with this opinion, and, as so modified, will be affirmed.    Appellant and the lienors will recover costs.

Bird, C. J., and Sharpe, Snow, Steere, Wiest, Clark, and McDonald, JJ., concurred.